UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERRY E. BINGAMAN, *et al.*,

Plaintiffs,

vs.

Case No. 1:01-cv-707
(Weber, J.; Perelman, M.J.)

THE PROCTER & GAMBLE COMPANY,

Defendant.

**REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docs. 20, 21) BE GRANTED AND THIS CASE BE CLOSED**

In an amended complaint filed October 29, 1991 plaintiffs, Gerry E. Bingaman ("Bingaman") and Annie Brantley ("Brantley") (collectively "plaintiffs"), charged their former employer, The Procter & Gamble Company ("P&G," "the company," or "defendant"), with disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Ohio Rev. Code Ann. § 4112.02; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio Rev. Code Ann. § 4112.02; violations of § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140; and intentional infliction of emotional distress under Ohio common law. (*See* doc. 3). This matter is before the Court on defendant's motion for summary judgment. (Docs. 20, 21).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Plaintiffs have filed a memorandum in opposition to the motion (doc. 26); defendant has filed a reply (doc. 30).

It is undisputed that plaintiffs were employed by defendant company at its Ivorydale site in St. Bernard, Ohio for nearly twenty years (*see* docs. 3, doc. 28, ¶ 1, doc. 31, ¶ 1),[2] and that each suffered injuries that led to medical restrictions or disabilities. (Doc. 31, ¶¶ 4, 13). Although plaintiffs had worked as "manufacturing technicians" prior to their injuries, they were subsequently reassigned to sedentary positions at a weighing facility or "scale house," which was part of the Ivorydale warehouse operations. (*See* doc. 28, ¶¶ 44, 47-48; doc. 31, ¶¶ 5-6, 14).

Beginning in the late 1990's, the company undertook a campaign to cut costs that involved contracting out the scale house positions. (Doc. 28, ¶ 8; doc. 31, ¶¶ 17-18). When the Murray Road Scale House at which plaintiffs were then assigned was fully contracted out, they were reassigned to the Spring Grove Scale House. (*See* doc. 28, ¶ 52). In 1999, plaintiffs were advised that the Spring Grove Scale House positions would also be contracted out. (*See* doc. 28, ¶¶ 67-68, 83).

In February 2000 Bingaman took a medical leave of absence, and in March 2000, Brantley was placed on a leave of absence. (Doc. 28, ¶¶ 69, 85). Both plaintiffs believed that during their absences the company would search for available positions, taking into

[2] Docket entry 28 ("doc. 28") represents defendant's Proposed Findings of Fact with undisputed factual allegations highlighted by plaintiffs. Docket entry 31 ("doc. 31") represents plaintiffs' Proposed Findings of Fact with undisputed factual allegations highlighted by defendant.

consideration their respective medical restrictions. (*See* doc. 28, ¶¶ 68, 86; doc. 31, ¶ 31). Their scale house positions, however, were fully contracted out in April 2000. (Doc. 28, ¶ 54; doc. 31, ¶ 45).

In July 2000 Brantley returned to work in a light duty position in a manufacturing department, but left two weeks later when the work proved too strenuous. (Doc. 28, ¶¶ 86, 88). Her employment was terminated in April 2001 because the company had no other work for her at the Ivorydale site. (Doc. 28, ¶ 139, doc. 31, ¶ 49).

Bingaman was called back to work in November 2000, but his employment was terminated because there were no jobs available for him at the Ivorydale site. (Doc. 28, ¶ 133, 136; doc. 31, ¶ 48). Prior to his discharge, he requested a transfer to another P&G facility. (Doc. 31, ¶ 35-36). He also requested that defendant modify the "High Performance Work System"[3] applicable to manufacturing jobs so that co-workers could assist him with portions of the job that he was unable to perform. (*Id.,* ¶¶ 43-44).

In the motion for summary judgment (doc. 21), defendant maintains that plaintiffs failed to make a prima facie showing of discrimination under the ADA, ADEA, or Ohio law or a prima facie showing of an ERISA violation, and that plaintiffs cannot establish all of the elements necessary to prevail on a state law tort claim for the intentional infliction of emotional distress.

---

[3] In the "High Performance Work System" the manufacturing technicians involved in a particular operation work as a team. (*See* doc. 28, ¶¶ 32-36). Defendant maintains that each technician is required to be able to do all of the jobs assigned to the team (*see id.*, ¶ 33, 35), as a result of which there were no "sedentary" manufacturing positions. (*Id.*, ¶ 37).

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the governing substantive law, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied,* 451 U.S. 914 (1981)).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 249. The inquiry is whether the evidence presents a sufficient disagreement over the facts to require submission of the case to a jury or whether the

evidence is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52.

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

Plaintiffs' claims of discrimination in violation of the ADA and Ohio Rev. Code Ann. § 4122.02 may be considered together because the essential elements of these claims are the same and federal case law interpreting the ADA is equally applicable to cases arising under Ohio Rev. Code Ann. § 4112.02. *See Blankenship v. Martin Marietta Energy Sys., Inc.,* 83 F.3d 153, 155 (6th Cir. 1996).

In order to establish a prima facie case of disability discrimination, an employee must establish that: (1) he/she is an individual with a disability; (2) he/she is otherwise qualified to perform the job requirements, with or without reasonable accommodation; (3) he/she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *See Hedrick v. Western Reserve Care Sys.,* ___ F.3d ___, 2004 WL 43163, at *4-5 (6th Cir. Jan. 9, 2004) (citing

*Walsh v. United Parcel Serv.,* 201 F.3d 718, 724-25 (6th Cir. 2000); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)).

Although not conceding that plaintiffs are "disabled" within the meaning of the ADA (*see* doc. 21, p. 25, n.7), defendant contends that if plaintiffs were able to meet their burden of showing they are disabled they cannot show that it failed to provide them a reasonable accommodation for any open positions for which they were qualified.

"A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998) (quoting *Monette,* 90 F.3d at 1183). The employer then has the burden to show that an accommodation would impose an undue hardship. *Id.* at 634; *Monette,* 90 F.3d at 1184; *see also Hedrick,* 2004 WL 43163, at *8.

To meet its duty to provide a reasonable accommodation an employer need only reassign a disabled employee to a vacant position. *Burns v. Coca-Cola Enter., Inc.,* 222 F.3d 247, 257 (6th Cir. 2000). The employer is not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual. *Id.* (internal citations omitted). Moreover, it is the employer's prerogative to choose a reasonable accommodation, and is not required to provide the particular accommodation that an employee requests. *Jay v. Intermet Wagner, Inc.,* 233 F.3d 1014, 1017 (7th Cir. 2000); *see also Schmidt v. Methodist Hosp.*

*of Ind., Inc.,* 89 F.3d 342, 344 (7th Cir. 1996) (stating that reasonable accommodation does not require an employer to provide literally everything the disabled employee requests).

Plaintiffs maintain that defendant did not offer reasonable accommodations for them because (1) it did not consider them for a transfer to another P&G facility and (2) it refused to modify the team-based high-performance work system.

In support of their contention that a transfer was a reasonable accommodation, plaintiffs presented evidence that the company had previously permitted transfers when one of its facilities was shut down. (*See* depo. of Michael Lindsey, pp. 13, 55). In addition the company had a one-percent (1%) transfer policy which permitted manufacturing technicians to transfer from Ivorydale to another facility. (*See* depo. of Scott Davis, ex. 7). To show that a modification of the work system was reasonable, plaintiffs point to evidence that other members of a team would be able to help a team member who might be restricted from doing a particular task. (*See* depo. of Barbara Lancor, p. 72; depo. of Scott Davis, p. 32).

This Court finds plaintiffs' assertion that the company denied them a reasonable accommodation by not considering them for positions outside of the Ivorydale site to be unavailing. First, defendant has presented evidence demonstrating longstanding nondiscriminatory policies pursuant to which each site was responsible for hiring and training its own employees, and that manufacturing technicians hired to work at Ivorydale were not permitted to transfer out of that site to another company division. (*See* depo. of

Scott Davis, pp. 64-65; Depo. of Michael Lindsey, p. 44). Defendant has also presented evidence that the one-percent transfer program, a pilot project, was limited in eligibility to certain management level employees (*see* depo. of Scott Davis, ex. 7), which would exclude plaintiffs, and, moreover, that selection of transfer candidates was within the control of the receiving, not the sending, organization. (*See id.*) *See, e.g., Hoskins v. Oakland County Sheriff's Dep't,* 227 F.3d 719, 728 n.3 (6th Cir. 2000) (in order to satisfy its duty under the ADA, the employer is only required to transfer an employee to a position comparable to the employee's prior position).

This Court further finds that defendant was not required to modify the team based work system. Although "job restructuring" is a reasonable accommodation in appropriate circumstances, *see* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii), the ADA does not require an employer to reallocate job duties in a manner that changes the essential functions of a job. *Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 632 (6th Cir. 1992). Restructuring manufacturing jobs to permit other employees to perform the more physical tasks that plaintiffs may be unable to do by reason of their disabilities is not an objectively reasonable accommodation. *See id.*; *see also Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 913 (7th Cir. 1996); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 112-13 (8th Cir. 1995).

Plaintiffs' inability to identify any open positions for which they were qualified at any facility negates their ability to make out a prima facie case of discrimination. *See Burs.,* 222 F.3d at 257.

Finally, this Court finds that defendant did not fail to provide a reasonable accommodation when plaintiffs were called back to work after being placed on medical leaves of absence. Neither the ADA nor Ohio law requires that a disabled employees be given an indefinite leave of absence as a "reasonable accommodation." *See Walsh,* 201 F.3d at 727; *Scott v. University of Toledo,* 137 Ohio App. 3d 538,739 N.E.2d 351 (Ohio Ct. App. 10th Dist. 2000).

In sum, defendant is entitled to judgment as a matter of law with respect to plaintiffs' federal and state law claims of discrimination based on disability.

Defendant next contends that it is entitled to judgment as a matter of law with respect to Brantley's claims of age discrimination.[4] As in the case of a disability discrimination claim under state law, federal case law interpreting Title VII and the ADEA is applicable to cases alleging age discrimination in violation of Ohio Rev. Code Ann. § 4112.02. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St. 2d 192, 421 N.E.2d 128, 131 (Ohio 1981); *see also Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 469 (6th Cir. 2002); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 668 (6th Cir. 2000).

In order to prevail on her claim, Brantley bears the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 342 (6th Cir. 1997). In

4 Plaintiff Bingaman does not assert a claim of age discrimination. (*See* doc. 3, ¶¶ 51-54).

order to make this showing, she must demonstrate: (1) that she was in a protected class, *i.e.,* over 40 years of age; (2) that she was qualified for the job that she held during the time in question; (3) that she suffered an adverse employment action; and (4) that she was replaced by a significantly younger person. *See Grosjean v. First Energy Corp.,* 349 F.3d 332, 335 (6th Cir. 2003) (citing *Kline,* 128 F.3d at 342).

If plaintiff makes this showing the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the action taken. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). If defendant is able to meet this burden, plaintiff is then required to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were pretextual. *Id.* Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible. *Id.* at 256.

In support of her claim of age discrimination Brantley simply alleges that defendant discriminated against her by treating her differently than younger employees and by terminating her employment. (*See* doc. 3, ¶ 53). These naked allegations are insufficient to make out a prima facie case of age discrimination because she has not shown that she was replaced by a significantly younger individual. *See Grosjean,* 349 F.3d at 335; *Kline,* 128 F.2d at 342.

Plaintiffs next allege that their positions were terminated in violation of § 510 of ERISA, 29 U.S.C. § 1140 (*see* doc. 3, ¶ 61), which provides in pertinent part that it is "unlawful for any [employer] to discharge ... or discriminate against [an ERISA]

participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140.

To make out a prima facie case under this section plaintiffs must show (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which an employee may be entitled. *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir. 1997). An employer can refute a prima facie case by introducing "evidence of a legitimate, nondiscriminatory reason for its challenged action." *Id.* "This shifts the burden back to the plaintiff to show that the employer's proffered reason was mere pretext. Although the plaintiff need not show that the employer's sole purpose ... was to interfere with plaintiff's entitlement to benefits, he must either prove that the interference was a motivating factor in the employer's actions or prove that employer's proffered reason is unworthy of credence." *Id.* To establish an ERISA violation, plaintiffs must establish that they had requested and were denied a specific benefit that they were due under the company's employee benefit plan. *See Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 307 (6th Cir. 2003).

Defendant is plainly entitled to summary judgment on plaintiffs' claim because (a) they have not identified any ERISA plan with which defendant allegedly interfered and (b) they have not submitted any evidence to show that in terminating their employment defendant was motivated by a specific intent to avoid liability under an ERISA plan. The fact that plaintiffs were discharged, standing alone, is insufficient to demonstrate a violation under § 510. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113

(6th Cir. 2001).

Finally, plaintiffs seek an award of damages for state law claims based on the intentional infliction of emotional distress ("IIED").

To establish a claim for IIED under Ohio law, plaintiffs must show (1) that defendant either intended to cause serious emotional distress or knew or should have known that his actions would result in serious emotional distress to plaintiff; (2) that defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; (3) that defendant's actions were the proximate cause of plaintiffs' psychic injuries; and (4) that plaintiffs suffered serious mental anguish of a nature that no reasonable person could be expected to endure it. *See Strausbaugh v. Ohio Dep't of Transp.,* 150 Ohio App. 3d 438, 782 N.E.2d 92, 96 (Ohio Ct. App. 10th Dist. 2002). "[M]ajor outrage is essential to the tort, and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. Only conduct that is truly outrageous, intolerable, and beyond the bounds of decency is actionable." *Id.* (internal citations omitted).

Defendant contends that it is entitled to judgment as a matter of law because the record is completely lacking any evidence of the "extreme and outrageous conduct" required to support an IIED claim. Defendant further maintains that there is no evidence that Brantley suffered any psychological distress or emotional problems, the sole basis of her claim being that her employment was terminated and that her feelings are hurt because

of it. (*See* depo. of Annie Brantley, pp. 241-42). Similarly, defendant argues that the evidence does not support a finding that the "panic attacks" that Brigaman allegedly suffers are the result of defendant's conduct.

This Court finds that defendant is entitled to summary judgment on Brantley's IIED claim because she has failed to come forward with any evidence to show that she suffered any psychic injury. With respect to Bingaman's claim that he suffers emotional distress, defendant is entitled to summary judgment because he has not identified any conduct by defendant that would satisfy the requirement for extreme and outrageous conduct.

In conclusion, plaintiffs have not met their burden of showing that genuine issues of material fact exist with respect to their claims of disability discrimination under the ADA, the ADEA, and Ohio Rev. Code Ann. § 4112.02, of an ERISA violation, and of IIED.

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion for summary judgment (docs. 20, 21) should be **GRANTED**. As no further matters remain pending for this Court's review, the case should be **CLOSED.**

s/David S. Perelman
David S. Perelman
United States Magistrate Judge

J:\Shinne\dsp\1-01cv707 RR.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERRY E. BINGAMAN, *et al.,*

Plaintiffs,

vs.

Case No. 1:01-cv-707
(Weber, J.; Perelman, M.J.)

THE PROCTER & GAMBLE COMPANY,

Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof. That period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).