**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| GERRY E. BINGAMAN, et al. | : | Case No. C-1-01-707 |
| | : | J. Weber |
| Plaintiffs, | : | Mag. J. Perelman |
| | : | |
| vs. | : | |
| | : | |
| THE PROCTER & GAMBLE | : | **PLAINTIFF'S OBJECTIONS TO THE** |
| COMPANY | : | **MAGISTRATE JUDGE'S REPORT** |
| | : | **AND RECOMMENDATION** |
| Defendant. | : | |

I.    **INTRODUCTION**

Under Fed. R. Civ. P. 72(b) Plaintiffs Gerry Bingaman and Annie Brantley object to

Magistrate Judge Perelman's February 10, 2004 Report and Recommendation ("R&R") that

Defendant P&G's Motion for Summary Judgment be granted.  For the reasons discussed below,

Plaintiffs respectfully oppose the Magistrate Judge's recommendations to grant summary

judgment on their disability discrimination and ERISA claims.

II.    **ARGUMENT**

A.    **Standard Of Review**

When timely objection has been made to a portion or portions of a magistrate's R&R,  the

district judge must make a *de novo* determination of any portion of the magistrate's disposition to

which specific written objection has been made. Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. §§

636(b)(1).  The district court judge may then accept, reject, or modify, in whole or in part, the

proposed findings and recommendations.  28 U.S.C. §§ 636(b)(1).  The district judge must

independently review the law, the record, and the magistrate judge's report with regard to the

objections raised.  Flourney v. Marshall, 842 F.2d 875, at 878-79 (6th Cir. 1988).  Ultimately, the

district judge is given the widest discretion to accept, reject, or modify the magistrate judge's

proposed findings and recommendations. Id., at 877.

Summary judgment may only be granted if there are no genuine issues of material fact,

such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

"[A]lthough the court should review the record as a whole, it must disregard all evidence

favorable to the moving party that the jury is not required to believe."  Reeves v. Sanderson

Plumbing, 530 U.S. 133, 151 (2000).  It is well-recognized that when the motivation, intent,

or state of mind of the Defendant is at issue, summary judgment in discrimination cases is

rarely appropriate.  Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001); see also,

Canitia v. Yellow Freight System, Inc., 894 F.2d 196, 199 (6th Cir. 1990) (every reasonable

and favorable inference should be given to Plaintiff's version or allegations of discriminatory

intent); Gallo v. Prudential Residential Services L.P., 22 F.3d 1219 (2d Cir. 1994) (summary

judgment is drastic remedy in discrimination cases and should be granted only sparingly).

### B.    Legal Background

This case arises out of the termination of Plaintiffs employment each after more than

twenty three years of service to Defendant.  In evaluating their disability discrimination claims

Magistrate Judge Perelman concluded that the Plaintiffs did not establish that Defendant failed

to accommodate them under federal and state disability law.  Plaintiffs respectfully object to

this recommended ruling because Magistrate Judge Perelman's reasoning does not properly

apply Sixth Circuit authority, misstates facts, improperly resolves disputed material issues of

fact in Defendant's favor, fails to consider all of Plaintiffs' evidence, and fails to view that

evidence in the light most favorable to Plaintiffs.  Plaintiffs also object to the R&R's analysis

of their ERISA claims on similar grounds.  The record contains sufficient evidence to establish

the essential elements of their disability and ERISA claims.  At a minimum, Plaintiffs have

sufficient evidence to create genuine issues of material fact which preclude summary

judgment.[1]

> **C.    Defendant's Refusal To Consider A Transfer Outside Ivorydale Was A Failure To Reasonably Accommodate Plaintiffs' Disabilities**
>
> > **1.    The R&R Should Not Be Adopted By This Court Because It Mis-Applies Sixth Circuit Authority**

Defendant is not entitled to summary judgment on Plaintiffs' disability discrimination

claims because Defendant failed to reasonably accommodate them by not looking at a "broad

range" of jobs for the Plaintiffs.  The evidence in the record establishes that Defendant's efforts

to place the Plaintiffs was limited to manufacturing technician jobs at Ivorydale that Plaintiffs

could not perform without an accommodation because of their disabilities.  Defendant alleged

and the R&R recommends that restructuring the technician job was not a reasonable

accommodation under the ADA.  (R&R p. 8).  Assuming *arguendo* that modification was not

required, then under established Sixth Circuit case law Defendant had an affirmative duty to

consider transfer to a "broad range" of jobs including a "different type of position."  Burns v.

Coca-Cola Enterprises, Inc., 222 F.3d 247,  256-58  (6th Cir. 2000)(*citing* Gile v. United Airlines,

Inc. 95 F.3d 492, 496 (7th Cir. 1996); Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667,

676 (7th Cir. 1998)).  Defendant failed to do this by limiting the search to technician jobs at

Ivorydale that it was known the Plaintiffs could not perform.

In recommending summary judgment for Defendant, the R&R misinterprets and expands

---

[1]Plaintiffs do not object to the Magistrate Judge's R&R with respect to the Age and Intentional Infliction of Emotional Distress Claims.

the case law which suggests that the accommodation of reassignment "to an equivalent position, in terms of pay, status, etc.," is sufficient under the ADA.  Instead the R&R interprets that this case law actually means that an employer only has to look at jobs that are similar to or "comparable to the employee's prior position."  (R&R p. 8, *citing* Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719, 729 n.3 (6th Cir. 2000)).  The R&R expands the prior holdings to erroneously conclude that P&G did not have to look at any positions besides the technician jobs that remained at Ivorydale as an accommodation presumably because the positions outside Ivorydale that Plaintiffs sought were not "comparable."  In doing so, the R&R clearly misapplies the dicta in Hoskins.  The Hoskins footnote and the language cited in it means exactly what it says: "equivalent, in terms of pay, status, etc."  As such, Defendant was not required under the ADA to promote Plaintiffs to a higher level job for which they were not qualified as an accommodation.  However, the R&R's extension of that language and use of the word "comparable" is inconsistent with established Sixth Circuit authority that requires an employer to look at "a different type of position."  See Burns, 222 F.3d at 256.  Plaintiffs' disabilities are the reason they cannot perform their former technician jobs in the first place.  Therefore, the R&R's suggestion that Defendant had reasonably accommodated Plaintiffs by only looking to transfer them to technician jobs the company already knew they could not perform is entirely inconsistent with the whole concept of reassignment as an accommodation under the ADA and established case law.[2]  If a "different type of position" besides manufacturing technician did not exist at the

---

[2]The only accommodation efforts Defendant made on behalf of Plaintiffs was to give their names and restrictions to the Ivorydale manufacturing technician staffing team.  As the leader of that team, Scott Davis admitted the only thing the team looked at were technician jobs. (Davis pp. 54-55). Technician jobs, according to Defendant, under the High Performance Work System, were not sedentary in nature and required technicians to perform all of the jobs in the plant. (Def. Reply pp. 19-20).

Ivorydale plant where the Plaintiffs worked, then disability law required Defendant to consider

transferring Plaintiffs elsewhere in P&G.  (See Burns, 222 F.3d at 256, citing Gile, 95 F.3d at

497-98, which recognized that the EEOC's interpretive guidance "implies that reasonable

accommodation may also include reassignment outside of the particular department, office, or

facility in which the employee previously worked.")  Given that Defendant refused the Plaintiffs'

request for transfer to another job outside Ivorydale, the R&R should not be adopted because it

incorrectly recommended summary judgment for Defendant on Plaitniffs' failure to

accommodate claims.

The R&R should also not be adopted because the Sixth Circuit in Burns did not hold that

a failure by Plaintiffs to identify open positions was an absolute bar to establishing a *prima facie*

case of  failure to accommodate as the Magistrate Judge suggests.  (See R&R p. 8).  Instead, the

Burns Court explicitly stated that an employee could also establish a case by demonstrating that

she or he "was denied some specific assistance in identifying jobs for which [s]he could qualify."

222 F.2d at 258.  In this case, it is undisputed that Plaintiffs inquired about transferring outside of

Ivorydale to other facilities in Cincinnati with jobs that would have accommodated their

disabilities.  (Lancor p. 88; Bingaman Dep. Ex. 15).  Instead of helping Plaintiffs to identify open

positions elsewhere at P&G, Defendant responded to this request by telling them that

manufacturing technicians were prohibited from transferring outside Ivorydale.  (Bingaman Dep.

Exs. 15-17).[3]  Therefore, under the facts of this case, Plaintiffs can establish a failure to

accommodate and are not required to identify positions outside Ivorydale because Defendant

---

[3]Defendant's suggestion that Plaintiffs were not really prohibited from transferring
outside Ivorydale because they could have quit their jobs and applied for those positions as non-
employees is disingenuous and does not satisfy Defendant's duty under the ADA.  (See Def.
Reply p. 5).  Nothing requires Plaintiffs to quit the jobs they held for nearly twenty-four years
and give up their rights to a reasonable accommodation under the ADA.

refused to provide them any assistance in finding those jobs and told them they could not have them.[4]  Therefore, Defendant is not entitled to summary judgment and the R&R must not be adopted because it does not follow Sixth Circuit law.

### 2.   The R&R Misstates Facts And Improperly Resolves Disputed Material Issues Of Fact In Defendant's Favor

The R&R suggests that Plaintiffs' evidence that Defendant failed to accommodate them by refusing to consider a transfer outside Ivorydale was "unavailing." (R&R p. 7)  However, in reaching this erroneous conclusion, the Magistrate Judge improperly resolved in Defendant's favor and then relied upon a disputed issue of fact: "that manufacturing technicians hired to work at Ivorydale were not permitted to transfer out of that site to another company division." (R&R p. 7).  The R&R also makes inaccurate statements of fact that neither Plaintiffs or Defendant have asserted.  Specifically, the R&R incorrectly claims that P&G's written 1% transfer policy, which expressly allows for the transfer of technicians like Plaintiffs, only applies to "management level employees." (R&R p. 8, *citing* Davis Dep. Ex. 7).  Therefore, the R&R decided that Plaintiffs were prohibited from transferring based on a mis-statement of fact that Defendant's transfer policy applies only to management employees.  In fact, the policy does not apply to management employees, it does not say that anywhere in the policy, and neither Plaintiffs nor Defendant ever asserted that it did apply to management.  Instead the transfer policy explicitly states that it applies to "Ivorydale Plant Technicians" like the Plaintiffs.  (Davis Dep. Ex. 7).[5]

---

[4]The R&R also improperly failed to consider and view in the light most favorable to the Plaintiffs' evidence that there were a number of open positions in Cincinnati for which Plaintiffs were qualified.  (See infra pp. 9-10; Bingaman Dep. Ex. 33; Bingaman pp. 311-13).

[5]The R&R contains other misstatements of fact that were not necessarily material to the recommendation, but perhaps demonstrate a failure to carefully and completely consider the

In addition to the R&R's misstatement of fact, the recommendation must also be rejected by this Court because the Magistrate Judge has failed to view the facts in the light most favorable to Plaintiffs as required at summary judgment. Reeves, 530 U.S. at 151. Whether Defendant had a legitimate, non-discriminatory policy that prohibited technicians from transferring outside Ivorydale is a disputed issue of material fact that cannot be resolved in Defendant's favor at summary judgment. The R&R improperly credits the deposition testimony of Defendant's witnesses, while dismissing Plaintiffs' evidence of past practice and the written 1% transfer policy to conclude that Defendant had a policy which prohibited technicians from transferring. (R&R pp. 7-8; See Reeves, 530 U.S. at 151 reiterating that "the court should give credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendant] that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."). In this regard, the R&R has in effect taken over the role of the jury and weighed the evidence in favor of the moving party. The record does not contain any written company policy, collective bargaining agreement, handbook, etc. that prohibits technicians from transferring out of Ivorydale to other positions within Defendant. Instead, the evidence in the record does contain a written company policy that expressly allows for transfer and evidence that before and after Plaintiffs termination Defendant has allowed other technicians to transfer. (Lindsay p. 55; Lancor pp. 78, 81).

Moreover, the R&R completely ignores Plaintiffs evidence and established case law that even if the jury decides that Defendant had a no-transfer policy, the ADA requires that Defendant

---

evidence in the record. For example, the R&R states that Plaintiffs had "nearly twenty years" of employment at Ivorydale. (R&R p. 2). In fact, both Plaintiffs had worked at Ivorydale for more than twenty-three years beginning in 1977. Plaintiff Brantley, actually began working there in 1976 as a temporary employee. (Brantley pp. 11, 64-65).

must still look at a "broad range" of jobs.  The R&R also fails to acknowledge Sixth Circuit case law that Plaintiffs can challenge a no-transfer policy by demonstrating an "unreasonable inflexibility in the face of a demand for reasonable adjustments to accommodate a disabled candidate for transfer." Burns, 222 F.3d at 258 *quoting* Dalton, 141 F.3d at 676.  For Plaintiffs or any disabled employee that Defendant claims there is no job at Ivorydale to accommodate their restrictions, there is no legitimate business reason not to allow a transfer.  The only non-discriminatory justification Defendant has alleged for a no-transfer policy from Ivorydale is that the company wants to avoid losing employees that it has trained.  (Def. MSJ p. 29).  However, that justification simply does not apply to Plaintiffs or any disabled employee whom Ivorydale claims it cannot use anyway.  Indeed, Manager Scott Davis admitted that he could not think of any business reason why Defendant would not allow a transfer for employees Ivorydale cannot use.  (Davis pp. 82-84).  Therefore, even if Defendant had an absolute prohibition against transfers, which it does not, the company still failed to accommodate Plaintiffs because there was no legitimate non-discriminatory reason to deny Plaintiffs the opportunity to look elsewhere in the company.  A contrary holding defeats one of the purposes of the ADA which is to "prevent the employee from being out of work and employer from losing a valuable worker." Burns, 222 F.3d at 247 (citations omitted).

Finally, the fact that Defendant has allowed transfers in the past demonstrates that even if the fact-finders believed that a no-transfer policy did exist, the company had flexibility in applying it.  Clearly, the alleged no-transfer policy was not applied to every technician based on past practice.  Summary judgment should not be granted based on the facts of this case because the evidence demonstrates that Defendant violated the ADA by being unreasonably inflexible to Plaintiffs with no legitimate business reason.  At a minimum, there is more than enough evidence

for a reasonable fact-finder to conclude that Defendant failed to accommodate the Plaintiffs.

### 3.    The R&R Failed To Consider Additional Evidence That Further Demonstrates That Summary Judgment Should Be Denied

This Court should not adopt the R&R with respect to Plaintiffs' disability claims because the recommendation did not consider and/or failed to give Plaintiffs the benefit of all reasonable inferences from additional evidence in the record of a failure to accommodate and disability discrimination. For example, as discussed above, the R&R erroneously recommends that the alleged failure of Plaintiffs to identify other open positions for which they were qualified is fatal to their ability to establish a *prima facie* case. (See supra., p. 5; R&R p. 8). Besides being an incorrect statement of law in cases where the employer has denied assistance in searching a broad range of jobs, the R&R fails to give proper weight to Plaintiffs evidence that Defendant had many open positions in the technical centers that would have accommodated Plaintiffs' disabilities. (See Pl. Mem in Opp. to Def. MSJ p. 20-21; Bingaman pp. 311-313, Bingaman Dep. Exs. 21, 33).[6] Contrary to the R&R and Defendant's suggestion otherwise, Plaintiff Bingaman did present substantial evidence that he was qualified for an A&T job in the technical centers based on his excellent score on the A&T test. (Whittenbarger Dep. Ex. 5). While Defendant attempts to counter this evidence by citing strange testimony that the A&T test is not really associated with an A&T job, the head of HR for Ivorydale Mike Lindsay testified that the test was in fact specifically designed for employees interested in A&T jobs. (Lindsay p. 88; but see Def. Reply p.12, fn. 2). This is precisely the type of factual dispute that cannot be resolved in

---

[6]In Defendant's reply brief, Defendant states that "it is uncontroverted he [Plaintiff Bingaman] never brought any of those allegedly 'open positions' to the attention of Human Resources Manager Barbara Lancor." (Def. Reply pp. 11-12). However, that assertion is irrelevant given the undisputed fact that Lancor told Bingaman on multiple occasions that he could not transfer anyway. A reasonable person like Bingaman would not discuss those jobs with Lancor because she already told him that it was not an option.

Defendant's favor at summary judgment. The R&R improperly did just that in recommending summary judgment for Defendant by suggesting that Plaintiffs did not identify open positions for which they were qualified. The record does contain evidence from which a reasonable juror could conclude that open positions existed for which Plaintiffs were qualified. Therefore, summary judgment should be denied.

Moreover, the R&R also fails to address and consider documentary evidence that Defendant specifically targeted the elimination of jobs that were staffed entirely by disabled employees, i.e., PDE's or Partially Disabled Individuals in Defendant's terminology. (Pl. MIO to Def MSJ pp. 19-20). In fact, one of the stated objectives of Defendant was to develop "a real transition plan [that] will be agreed to that eliminates P&G employees (PDE's) from the 2 gates and replaces them with more cost efficient staffing (Pinkerton/contractors)." (Ex. 2, attached to GMR Aff.) This is direct evidence of disability discrimination. While Defendant has argued that the decision to replace the disabled Plaintiffs with contract workers also included the elimination of many other jobs not held be disabled workers, the undisputed fact remains that internal company documents specifically describe not just eliminating Plaintiffs' jobs, but doing away with all jobs that are primarily staffed by disabled individuals citing a need "gravitate away from these [PDE] roles." (Ex. 1, attached GMR Aff.). Moreover, the undisputed facts about what actually occurred after the elimination of the warehouse jobs and Defendant's track record with regard to the placement of disabled individuals after the company decided to eliminate all PDE roles is additional evidence that a reasonable jury must be allowed to consider in determining whether Defendant discriminated against Plaintiffs on the basis of their disabilities. Of the 50-100 workers who were affected by the outsourcing of the warehouse operations, Plaintiffs were the only ones who were not placed in other jobs. (Lancor p. 24; Lindsay p. 65). In fact, of the

approximately fifteen employees on the PDE list, only one was placed permanently.

(Whittenbarger p. 113).  The rest, like Plaintiffs, were terminated.  (Id.)

The evidence in the record demonstrates that Defendant failed to accommodate Plaintiffs

and  shows that the company did not accommodate them because of an explicit intent to

eliminate jobs that were filled with disabled individuals.  Even classifying Plaintiffs and other

disabled individuals as PDE's is discrimination under the ADA's definition which prohibits

classifying an employee in a way that adversely affects their opportunities or status.  See 42

U.S.C.A. §12112 [sec. 102](b)(1).  The R&R failed to consider much of this evidence, relied

upon erroneous facts, resolved disputed issues of fact in Defendant's favor, and misapplied Sixth

Circuit case law.  Plaintiffs have sufficient evidence to establish their failure to accommodate

claims and therefore this Court should not adopt the R&R and deny summary judgment.

**D.    Plaintiffs Can At Least Raise A Genuine Issue Of Fact As To Whether Their Termination Violates ERISA**

Contrary to the R&R, Plaintiffs have sufficient evidence to meet the low threshold of a

*prima facie* case of ERISA retaliation.  Therefore, Defendant is not entitled to summary

judgment.  The R&R is based on an erroneous conclusion that Plaintiffs failed to identify any

ERISA plan that Defendant interfered with and that Plaintiffs did not submit evidence of an

intent to avoid liability.  (R&R p. 11).  In fact, Plaintiffs identified Defendant's medical and

disability insurance, as well as Defendant's pension/retirement plan, all ERISA covered benefits.

(Pl. MIO Def. MSJ p. 24; Bingaman pp. 286-88).   More importantly, Plaintiffs' ERISA claims

under §510 are not based on Defendant's intent to interfere with any one specific plan.  Rather,

their claims are based on documentary evidence that Defendant sought to avoid all employee

benefit costs associated with Plaintiffs, in particular more expensive ERISA covered benefits like

insurance and pension/retirement plans.  In that regard, the R&R erred by suggesting that

Plaintiffs did not identify which ERISA plans or that because Plaintiffs claims were not focused

on any one ERISA benefit plan in particular that they have failed to establish a viable claim.

The R&R is also wrong in suggesting that Plaintiffs are required to demonstrate that they

were actually denied a specific benefit that they were due under an employee benefit plan.  (R&R

p. 11).  There is simply no requirement under established Sixth Circuit law that Plaintiffs receipt

of ERISA benefits precludes an ERISA claim:

> [T]he statute indicates only that the plaintiff must prove that the defendant
> engaged in conduct for the purpose of interfering with his rights, not that the
> employer's conduct actually has the effect of interfering with his rights.

Roush v. Weastec, Inc., 96 F.3d 840, 845 (6th Cir. 1996).  In this case, evidence in the record

demonstrates that it was their receipt of ERISA covered benefits and Defendant's concern about

future benefit costs that was "a motivating factor," along with their disabilities, in the decision to

terminate their employment.  See Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir

1992)("The plaintiff is not required to show that the employer's sole purpose in discharging him

was to interfere with his pension benefits, but rather that it was 'a motivating factor' in the

decision.")(citations omitted).  Contrary to the R&R's suggestion otherwise, Plaintiffs have

direct documentary evidence that benefit cost was a motivating factor in the adverse employment

decision to eliminate their jobs and terminate their employment.  As HR Director Lindsay

admitted, the primary driver behind the whole "3S Project" which led to Plaintiffs termination

was to save money.  (Lindsay p. 97).  It is significant that Plaintiffs' jobs at the Scalehouse still

existed long after their termination, but outside contractors, some of whom were actually trained

by Brantley, were performing those functions.  At the time Defendant eliminated their jobs, the

company knew it would be paying for those services.  However, the savings related directly to

the fact that Defendant did not have any obligation to pay ERISA covered employee benefits to the contract workers. Company documents created to support the decision to eliminate Plaintiffs' jobs at the Scalehouse specifically detail the benefit cost savings associated with replacing Plaintiffs and the other PDE's. (See Ex. 4, attached to GMR Aff.). The "3S Project" documents demonstrate a specific intent to eliminate Plaintiffs' Scalehouse jobs to provide a benefit savings to Defendant. On that basis alone, summary judgment must be denied because viewing that evidence in the light most favorable to Plaintiffs a reasonable jury could conclude that Defendant terminated Plaintiffs to avoid a benefit cost.

In recommending summary judgment, the R&R failed to credit and view in the light most favorable to Plaintiffs evidence in the record that Defendant calculated the benefit cost associated with Plaintiffs and other PDE's far in excess of the cost of other employees. Internal documents show that cost was calculated as high as 60.32% of wages. (Ex. 4, attached to GMR Aff.) That fact when viewed in combination with other evidence that Plaintiffs were the only two employees out of the 50-100 whose jobs were given to outside contractors that Defendant did not place in another job, is sufficient to establish at least an issue of fact concerning pretext and Defendant's intent to avoid continuing and future liability under ERISA. (See Lancor p. 25). While other jobs may have been contracted out, the evidence establishes that it was the Plaintiffs' jobs and their status as PDE's that Defendant specifically attributed a higher benefit cost to and a desire to not only replace them with contract workers but to eliminate higher benefit cost PDE's in general. (See Exs. 1,2,4,5, Attached to GMR Aff.) That is precisely what Defendant did by firing 14 of the 15 of the PDE's at Ivorydale. (Whittenbarger p. 113). Accordingly, Plaintiffs have sufficient evidence to establish their ERISA claims and therefore Defendant's Motion should be denied.

III.    **CONCLUSION**

For all of the foregoing reasons, Plaintiffs Gerry Bingaman and Annie Brantley

respectfully request that this Court decline to adopt the R&R and instead issue an Order denying

Defendant's Motion for Summary Judgment on Plaintiffs disability discrimination and ERISA

claims.

Respectfully submitted,


/s/ George M. Reul, Jr.
George M. Reul, Jr. (0069992)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
FREKING & BETZ
215 East Ninth Street, Fifth Floor
Cincinnati, OH  45202
513-721-1975


**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2004, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ George M. Reul, Jr.