UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GERRY BINGAMAN | : | Case No. C-1-01-707 |
| and | : | |
| ANNIE BRANTLEY | : | Judge Weber |
| | : | Magistrate Judge Perelman |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE PROCTER & GAMBLE | : | **DEFENDANT THE PROCTER &** |
| COMPANY | : | **GAMBLE COMPANY'S** |
| | : | **MEMORANDUM IN OPPOSITION** |
| Defendant. | : | **TO PLAINTIFF'S OBJECTIONS TO** |
| | : | **MAGISTRATE JUDGE PERELMAN'S** |
| | : | **REPORT AND RECOMMENDATION** |

## I.    INTRODUCTION

On February 10, 2004, Magistrate Judge Perelman issued his Report And Recommendation That Defendant's Motion For Summary Judgment Be Granted And This Case Be Closed.  (Doc. 36). On February 25, 2004, Plaintiffs filed their Objections To The Magistrate Judge's Report And Recommendation. (Doc. 37).

Plaintiffs object to Magistrate Perelman's R&R as it relates to Plaintiff's ADA and ERISA claims.[1]  (Doc. 37 at 3; 11).   For the reasons discussed below, Magistrate Perelman's thorough Report And Recommendation (hereinafter, "R&R") should be accepted and this Court should dismiss Plaintiffs' disability and ERISA claims.  As Magistrate Perelman correctly concluded, there is no issue of *material* fact in this case and accordingly, Defendant is entitled to summary judgment as a matter of law as Magistrate Perelman has correctly recommended.

---

[1]   Plaintiffs do not object to Magistrate Perelman's R&R with respect to Plaintiffs' emotional distress claims and Plaintiff Brantley's age discrimination claim. (Doc. 37 at 3, n.1).  Accordingly, this Court must accept Magistrate Perelman's recommendation that these claims be dismissed in their entirety. (Doc. 37 at 3, n.1).

## II.    ARGUMENT

### A.    Magistrate Perelman's Report And Recommendation Applied The Correct Standard For Summary Judgment.

Only factual disputes that might affect the outcome of a lawsuit under substantive law are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be "genuine," a dispute must involve evidence upon which a jury could find for the nonmoving party. Id.    In his R&R, Magistrate Perelman recognized and applied the relevant standard and wrote that "a party moving for summary judgment  [here, the Defendant], has the burden of showing the absence of genuine disputes over fact, which, under the governing substantive law, might affect the outcome of the action." (Doc. 36 at 4; internal citations omitted). Moreover, Magistrate Perelman recognized that he must, and then proceeded to, view all the evidence before this Court "in a light most favorable to the party opposing the motion." (Id.; internal citations omitted).

After an application of the correct standard for summary judgment to the facts of the case at bar, Magistrate Perelman found that Defendant met its burden on *all* of Plaintiffs' claims. He correctly found that there is *no* genuine issue of material fact and thus, Defendant is entitled to summary judgment as a matter of law on all of Plaintiffs' claims. (Doc. 36 at 13).    Although his R&R was thorough and his sound conclusions were based on applicable Sixth Circuit law, Plaintiffs now ask this Court to disregard Magistrate Perelman's recommendations. For the reasons discussed below, Defendant urges its acceptance.

### B.    Magistrate Perelman Correctly Applied Sixth Circuit Authority Relative To Plaintiff's Disability Claims.

In an ineffectual attempt to have this Court not adopt the thorough analysis and findings of Magistrate Perelman's R&R relative to Plaintiffs' disability claims, Plaintiffs incredibly (and incorrectly) claim that "the R&R must not be adopted because it does not follow Sixth Circuit law." (Doc. 37 at 6). Specifically, Plaintiffs claim that Magistrate Perelman "expanded" Sixth Circuit law to "erroneously conclude that P&G did not have to look at any positions besides the technician jobs

that remained at Ivorydale as an accommodation presumably because the positions outside Ivorydale that Plaintiffs sought were not 'comparable'." (Doc. 37 at 4).

Magistrate Perelman did nothing of the sort of which Plaintiffs accuse him. Rather, Magistrate Perelman correctly analyzed, relied upon and applied Sixth Circuit law to the uncontroverted facts of this case. Plaintiffs completely misapprehend the findings in Magistrate Perelman's R&R. Magistrate Perelman did *not* find that Defendant did not have an obligation to look outside Ivorydale simply because the positions outside Ivorydale that Plaintiffs sought were not *"comparable"*; rather, he correctly concluded that under applicable Sixth Circuit law, P&G was not required to look outside Ivorydale for positions in which to place Plaintiffs *because to do so would require Defendant to vitiate its own longstanding, nondiscriminatory policies pursuant to hiring and transferring employees*:

> This Court finds plaintiffs' assertion that the company denied them a reasonable accommodation by not considering them for positions outside of the Ivorydale site to be unavailing . . . defendant has presented evidence demonstrating longstanding nondiscriminatory policies pursuant to which each site was responsible for hiring and training its own employees, and that manufacturing technicians hired to work at Ivorydale were not permitted to transfer out of that site to another company division.[2]

(Doc. 36 at 7).

Consistent with Magistrate Perelman's findings, and contrary to Plaintiff's assertion that Defendant had a duty to consider transferring Plaintiffs outside of Ivorydale in contravention of

---

[2]  Plaintiffs take issue with a finding of the Magistrate that the transfer policy only applied to management-level employees. (Doc. 37 at 6). The policy actually permitted up to a maximum of one percent of its manufacturing technicians per year to transfer from Ivorydale to a location away from Ivorydale, provided that the other location directly supported one of Ivorydale's core manufacturing businesses and the *other* P&G business outside Ivorydale contacted Ivorydale's human resources department to even make Ivorydale *aware* of an open position. (Lancor Dep. 75-76; Lindsey Dep. 45). For instance, one position about which Ivorydale human resources department was contacted involved a position that required experience in chemicals and integrated planning logistics experience at one of P&G's technical centers. (Lancor Dep. 76). It is irrelevant, however, whether the policy applied to management-level employees or to manufacturing technicians as well. To whom the policy applied is not a material issue of fact, as the record establishes that P&G was not aware of and there was not *any position for which Plaintiffs would have qualified* that would have fallen under Ivorydale's transfer policy. (Lancor Dep. 75), and as explained hereafter, Sixth Circuit law did not require P&G to waive or otherwise vitiate its longstanding non-discriminatory policy on transfers away from Ivorydale.

established policy, nothing in the ADA or the parallel Ohio statute requires a Defendant to vitiate its own longstanding, nondiscriminatory policies in order to make a "reasonable accommodation" for disabled employees. In <u>Vinson v. Grant/Riverside Methodist Hospitals</u>, 2001 WL 1681125 at * 11-12, (S.D. Ohio, Aug 30, 2001) (Attached at Tab A), this Court held that it is not a requirement under the ADA that an employer breach its own legitimate employment policies to make a reasonable accommodation:

> an employer has a duty under the ADA to consider transferring a disabled employee . . . we do not, however, hold that the employer must reassign the disabled employee to a position for which he is not otherwise qualified, ***or that the employer must waive legitimate, non-discriminatory employment policies*** or displace other employees' rights to be considered in order to accommodate the disabled individual. (Emphasis added).

Similarly, in <u>Burns v. Coca-Cola Enterprises, Inc.</u>, 222 F.3d 247, 257-58 (6th Cir. 2000), the Sixth Circuit noted that while a reasonable accommodation may include reassignment outside of a particular department, office or facility, "[n]othing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers:"

> the EEOC regulations interpreting the Act clearly prescribe the scope of an employer's obligation to accommodate such individuals. According to the regulations, an employer need only reassign a disabled employee to a vacant position . . . [e]mployers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual.

<u>Burns</u>, 222 F.3d at 257-58 (citing <u>Dalton v. Subaru-Isuzu Automotive, Inc.</u>, 141 F.3d 667, 676 (7th Cir. 1998)). <u>See also</u> <u>E.E.O.C. v. Humiston-Keeling, Inc.</u>, 227 F.3d 1024, 1028 (7th Cir. 2000) (reiterating a prior holding that an employer is not required "to reassign a disabled employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer . . . [t]he contrary rule would convert a nondiscrimination statute into a mandatory preference statute");

Blue Shield of Kansas City, 214 F.3d 1011, 1020 (8th Cir. 2000) (reassignment is not required if it would violate legitimate, nondiscriminatory policies of the employer); Hall v. Claussen, 6 Fed. Appx. 655, 666 (10th Cir. 2001) (an employer is not required under ADA to violate important business policies that would make it unreasonable to reassign a disabled employee to a particular job); Smith v. Midland Brake, Inc., 180 F.3d 1154 (10th Cir. 1999) (employers are not required to violate other employment policies in order to provide a reassignment as an accommodation).

In his R&R, Magistrate Perelman cited the case of Hoskins v. Oakland county Sheriff's Dept., 227 F3d 719, 728 n.3 (6thCir. 2000) and in his R&R simply stated the point of law for which it stands as applied to the particular facts in Hoskins: "In order to satisfy its duty under the ADA, an employer is only required to transfer an employee to a position comparable to the employee's prior position." (Doc. 36 at 8). Plaintiffs claim that Magistrate Perelman "interpreted that [the Hoskins case] . . . actually means that an employer only has to look at jobs that are similar to or comparable to the employee's prior position;" and that in so doing, "the R&R clearly misapplies the dicta in Hoskins." (Doc. 37 at 4). Plaintiffs further argue that the Magistrate's "use of the word comparable is inconsistent with established Sixth Circuit authority that requires an employer to look at a 'different type of position'." (Id.)

Plaintiffs' claims are completely unfounded. As much as Plaintiffs would like to believe otherwise, Magistrate Perelman correctly interpreted and applied Hoskins to the instant case. The exact text of the language in the Hoskins citation that Magistrate Perelman summarized in his R&R is as follows:

> The regulations instruct that employers "should reassign the individual to an equivalent position, in terms of pay, status, etc., *if* the individual is qualified, and *if* the position is vacant . . . if [the plaintiff] can demonstrate that an equivalent position was open for which she was otherwise qualified, then she will prevail on her claim.

Hoskins, 227 F3d at 728 n.3 (emphasis added).

There is absolutely no indication in Magistrate Perelman's R&R that he incorrectly applied this language as Plaintiffs contend to "actually mean[ ] that an employer only has to look at jobs that are similar to or comparable to the employee's prior position ." (Doc. 37 at 4). To the contrary, Magistrate Perelman's **R&R says no such thing.** Instead, Magistrate Perelman correctly found that there is no requirement that the Defendant's longstanding, nondiscriminatory policy pursuant to which each site was responsible for hiring and training its own employees at that site required Defendant to look outside of Ivorydale for a position for Plaintiffs - - and, that with regard to positions within Ivorydale, there were no jobs available Plaintiffs were qualified to perform and there was no requirement for Defendant to reallocate job duties in a manner that changes the essential functions of a job:

> [r]estructuring manufacturing jobs to permit other employees to permit other employees to perform the more physical tasks that plaintiffs may be unable to do by reason of their disabilities is not an objectively reasonable accommodation. [3]

(Doc. 36 at 8).

Magistrate Perelman's R&R in no way indicates that he either misapplied Hoskins; that he misinterpreted or misapplied Sixth Circuit law; or that he "erroneously concluded" that P&G did not have to look at any positions outside Ivorydale because the positions outside Ivorydale were not comparable. To the contrary, Magistrate Perelman indeed followed and correctly applied Sixth Circuit law - - including, but not limited to, Hoskins - - and his R&R should be adopted in its entirety.

[3] Plaintiffs themselves admit that "it was well-known that Plaintiffs needed sedentary work" (Doc 29: Memorandum in Opposition 7); and "[t]here is no dispute that everyone knew Plaintiffs needed sedentary jobs." (Doc. 29: Memorandum in Opposition 15).

**C.**    **Magistrate Perelman Correctly Determined That There Are No Material Issues Of Fact And Defendant Is Entitled To Judgment As A Matter Of Law.**

As Magistrate Perelman's R&R correctly stated, the law requires that "summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." (Doc. 36 at 4). Magistrate Perelman wrote:

> The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. The inquiry is whether the evidence presents a sufficient disagreement over the facts to require submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. The Court is not duty-bound to search the entire record in an effort to establish a lack of genuinely disputed material facts.

(Doc. 36 at 4-5).

Plaintiffs make much to-do about Magistrate Perelman's alleged "misreading" of the facts. (Doc. 37 at 6-11).    However, Plaintiffs' own admissions are dispositive of their claims.    Plaintiffs cannot now "backpedal" on their own admissions in a futile attempt to defeat Magistrate Perelman's R&R.  The bottom line is that even if this Court were to review, in its entirety, *every single fact* that is presented in deposition testimony, the pleadings, answers to interrogatories, admissions on file and affidavits, summary judgment in favor of Defendant is wholly appropriate because Plaintiffs - - based on their *own* admissions - - are *unable* to meet their burden of proof to show that there were any positions for which they qualified - - with or without a reasonable accommodation.

When an employee seeks a reasonable accommodation, the *employee* must establish that a reasonable accommodation is possible, and bears the traditional burden of proof that he or she is qualified for the position with such reasonable accommodation.   Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 728 (6th Cir. 2000).

The record is uncontroverted that Plaintiffs did *not* establish facts to even create a question of fact on this issue, let alone meet this burden.  As Magistrate Perelman correctly concluded, Plaintiffs

7

themselves both admit that they were aware of *no* open positions within Ivorydale for which they were qualified and could perform consistent with their restrictions. (Doc. 36 at 8; Plaintiff Bingaman Dep. 221, 228-29; Plaintiff Brantley Dep. 153, 196). Bingaman conceded that he could *not* perform all of the essential functions that were required of a Manufacturing Technician in Ivorydale site's High Performance Work System. (Plaintiff Bingaman Dep. 242, 245). Brantley conceded that with her restrictions in place, she was not aware of *any* jobs at the Ivorydale site, as of March 2001, that she was able to perform consistent with her restrictions. (Plaintiff Brantley Dep. 196).

Moreover, with regard to positions outside of Ivorydale, Plaintiff Bingaman alleges, in self-serving statements in Plaintiffs' Memorandum in Opposition, that allegedly "there were a number of A&T positions available in Cincinnati prior to P&G terminating either Plaintiff." (Doc. 29: Memorandum in Opposition 20). However, with regard to those positions that Bingaman now in this lawsuit alleges were available, it is uncontroverted he never brought any of those allegedly "open positions" to the attention of Human Resources Manager Barbara Lancor. (Bingaman Dep. 314). Bingaman also admitted that he had no idea what all the qualifications were for those "open positions," and more important, he did not know if he even qualified for the positions he alleges existed. (Bingaman Dep. 314-317). Plaintiff put forth absolutely no evidence that he did. In fact, it is undisputed that any evidence that he presented on that issue was to the contrary. (Bingaman Dep. 314-17).

Plaintiffs further allege, without any record support for their allegation, that "there were support roles within Ivorydale, such as the mailroom, that Plaintiffs could have performed." (Doc. 29: Memorandum in Opposition 22). However, when directly questioned about the alleged "mailroom position," Plaintiff Brantley admitted that *she was not aware of any actual job vacancy that existed* that she could perform consonant with her medical restrictions. (Brantley Dep. 210-211). Merely alleging that P&G must have had "some position" for Plaintiffs to fill, as a matter of

law, is *not* sufficient to carry this burden. <u>Switala v. Schwan's Sales Enterprise</u>, 231 F. Supp. 2d 672, 685 (N.D. Ohio 2002).

Plaintiffs also attempt to create "material facts" where none exists in an effort to have this Court believe that Magistrate Perelman's R&R should be disregarded. For instance, Plaintiffs claim that "[c]ontary to the R&R and Defendant's suggestion otherwise, Plaintiff Bingaman did present substantial evidence that he was qualified for an A&T job [outside of Ivorydale] based on his excellent score on the A&T test." (Doc. 37 at 9). Plaintiffs claim that a material fact exists regarding the A&T test - - *i.e.*, whether the test was one that measured suitability for A&T positions, or whether the test was a general aptitude test that had nothing to do with A&T positions. (Doc. 37 at 9). However, regardless of what types of skills the A&T test measures, there is no dispute of material fact on this issue because Plaintiff Bingaman never identified any open A&T positions for which he was qualified. Moreover, even if, as Plaintiffs claim, the A&T test merely measured aptitude and not a candidate's qualifications for an open A&T position, neither Plaintiff Bingaman nor Plaintiff Brantley ever has identified *any* vacant job away from Ivorydale for which they were qualified to perform, with or without a reasonable accommodation. Since Plaintiffs fail to offer proof and the record is devoid of any evidence that there were any available positions for which they were qualified, they cannot prevail on their failure to accommodate claim. <u>Smith v. Ameritech</u>, 129 F.3d 857, 867 (6th Cir. 1997).

Plaintiffs further claim that Magistrate Perelman failed to "address and consider documentary evidence that Defendant specifically targeted the elimination of jobs that were staffed entirely by disabled employees." (Doc. 37 at 10). This, however, is yet another instance in which Plaintiffs attempt to create an issue of fact where none exists, as in their Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiffs *expressly* admitted that their positions were not singled out for elimination. Plaintiffs specifically admit that "[i]n addition to Plaintiffs, approximately 50-100 employees were affected by P&G's decision to contract out the warehouse

operations;" and that "sometime in 1999, P&G made a decision to staff *all* of the warehouse operations at the Ivorydale Manufacturing site with outside contractors. (Doc. 29: Memorandum in Memorandum in Opposition at 5-6) (emphasis added).

Based on the foregoing, Magistrate Perelman's sound and through R&R with respect to Plaintiff's federal and state law claims of discrimination based on disability should be adopted by this Court. There plainly is no material issue of fact and Defendant is entitled to judgment as a matter of law.

**D.    Magistrate Perelman Is Correct To Recommend Summary Judgment On Plaintiff's ERISA Claims.**

To state a claim under ERISA § 510, Plaintiffs must show that the Company had a *specific intent* to violate ERISA. Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997). In the absence of direct evidence of discriminatory intent, Plaintiffs must still prove the existence of: 1) prohibited employer conduct, 2) taken *for the purpose* of interfering; 3) with the attainment of any right to which the Plaintiffs may become entitled. Smith, 129 F.3d at 865. In order to survive a motion for summary judgment, it is imperative that Plaintiffs proffer evidence from which a reasonable jury could find that the Company's desire to avoid pension liability *was a determining factor* in the Plaintiffs' termination. Id. (emphasis added). Simply put, there is absolutely *no* evidence in the record that the Company itself had the specific intent to terminate the Plaintiffs' employment for the express purpose of interfering with their § 510 rights.

Plaintiffs *admitted* that their positions were not eliminated for the express purpose of interfering with their § 510 rights. Specifically, Plaintiffs admitted the following:

- Sometime in 1999, P&G made a decision to staff *all* of the warehouse operations at the Ivorydale Manufacturing site with outside contractors. (Doc. 29: Memorandum in Opposition to Defendant's Motion for Summary Judgment at 5).

- In addition to Plaintiffs, approximately 50-100 employees were affected by P&G's decision to contract out the warehouse operations - [i.e., Plaintiffs' positions were not "singled out" for job elimination.] (Doc. 29: Memorandum in Opposition to Defendant's Motion for Summary Judgment at 6).

Moreover, with respect to Plaintiff Brantley, she conceded that she has no evidence that would support her ERISA claim. (Plaintiff Brantley Dep. 243-44). There is none. She also admitted that she has *no* factual information that there were any individuals who were similarly situated that were treated any differently than she, or that she was terminated for any other reason than the fact that there was no work available that met her restrictions. (Plaintiff Brantley Dep. 228-29, 239). There is none.

With respect to Plaintiff Bingaman, he admitted that his only "evidence" of an ERISA violation was the mere fact that he was not assigned to another position within the Company. (Plaintiff Bingaman Dep. 286-87). This alleged "evidence," standing alone, is insufficient as a matter of law, to sustain a claim for a violation of ERISA § 510. See Majewski v. ADP, Inc., 274 F.3d 1106, 1113 (6th Cir. 2001) (under ERISA § 510, a plaintiff must clearly demonstrate that the employer had the *specific intent* of avoiding ERISA liability when it discharged him; *"otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510"*) (emphasis added).

Based on the foregoing admissions of both Plaintiffs, as a matter of law, Plaintiffs' § 1140 claims fail because they are unable to make out a *prima facie* case. There is no disputed issue of fact, and Magistrate Perelman's R&R should be adopted relative to Plaintiffs' ERISA § 510 claim.

## III.    CONCLUSION

Magistrate Perelman's sound and thorough Report And Recommendation should be accepted and this Court should dismiss, in its entirety, Plaintiffs' claims. As Magistrate Perelman correctly concluded, Plaintiffs ADA, ERISA, age discrimination and emotional distress claims must be dismissed because there is no issue of *material* fact in this case on any of Plaintiffs' claims. Accordingly, Defendant is entitled to summary judgment as a matter of law as Magistrate Perelman

has correctly recommended. Defendant urges this Court to accept Magistrate Perelman's R&R in its entirety.

Respectfully submitted,


/s/ Michael S. Glassman\
Michael S. Glassman, Esq. (0012713)\
Trina M. Walton, Esq. (0070469)\
DINSMORE & SHOHL LLP\
1900 Chemed Center\
255 East Fifth Street\
Cincinnati, OH 45202\
(513) 977-8200\
Fax: (513) 977-8141\
e-mail: michael.glassman@dinslaw.com\
e-mail: trina.walton@dinslaw.com

Attorneys for Defendant,\
The Procter & Gamble Company


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant The Procter & Gamble Company's Memorandum in Opposition to Plaintiff's Objections to Magistrate Judge Perelman's Report and Recommendation has been served by electronic mail via the Court's electronic filing system this 15th day of March 2004, upon George M. Reul, Jr., Attorney for Plaintiffs Gerry Bingaman and Annie Brantley, FREKING & BETZ, 215 East Ninth Street, Cincinnati, Ohio 45202.


/s/ Michael S. Glassman\
Michael S. Glassman

992448

12